# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00204-CV

**Charles Hull, Appellant**

**v.**

**Abel Dutch Vidaurri, Appellee**

## FROM THE COUNTY COURT AT LAW NO.2 OF TRAVIS COUNTY
## NO. C-1-CV-05-283889, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

Integral to our system of justice is reliance upon the fact-finder to resolve disputed issues of fact. *See Jaffe Aircraft Corp. v. Carr*, 867 S.W.2d 27, 28 (Tex. 1993). Because the majority misapplies the standard of review, steps into the shoes of the fact-finder, and substitutes its own judgment for that of the jury on a question of fact, I respectfully dissent.

The majority asserts that this case turns on whether Vidaurri exercised due diligence in serving Hull after the limitations period expired. After considering the evidence and testimony presented at trial, the jury considered the following question:

> From February 23, 2005 when the petition was filed through September 6, 2005 the date the petition was served, did Plaintiff Abel Vidaurri exercise due diligence to have Defendant Charles Hull served with the original petition?[1]

---

[1] The charge defined the term "due diligence" as "that standard of diligence to procure service which an ordinarily prudent person would have used under the same or similar

The jury answered this question in the affirmative.

On appeal, Hull challenges the legal and factual sufficiency of the evidence to support the jury's verdict on this issue. When reviewing the jury's findings for legal sufficiency, the supreme court has instructed that we must view the evidence in the light most favorable to the jury's verdict, crediting favorable evidence if a reasonable fact-finder could, and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). The test for legal sufficiency is whether the evidence would enable reasonable and fair-minded people to reach the judgment being reviewed. *Id*. at 827-28. In conducting a legal sufficiency review, we presume that the jury made all inferences in favor of their verdict. *Id.* at 821. In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence in the record, and we may overturn a judgment only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex. 1985) (citing *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951)). Further, when reviewing a jury verdict for legal and factual sufficiency, we must remember that it is the jury—not an appellate court sitting in review of the jury's verdict—that is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Golden Eagle Archery v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). As the trier of fact, the jury may resolve inconsistencies in the testimony of the witnesses and may believe one witness and not another. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

---

circumstances. The duty to exercise due diligence in service of process of the Original Petition is a continuous one beginning on the date suit is filed until the petition is served."

2

When, as here, a defendant raises the defense of limitations and the plaintiff provides an explanation to justify a delay in service, Texas courts have consistently recognized that the question of the plaintiff's diligence in effecting service is one of fact for the fact-finder to resolve. *See Proulx v. Wells*, 235 S.W.3d 213, 216 (Tex. 2007) (whether plaintiff's explanation demonstrates diligence was a fact question for the trier of fact); *Webster v. Thomas*, 5 S.W.3d 287, 289-90 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Eichel v. Ullah*, 831 S.W.2d 42, 44 (Tex. App.—El Paso 1992, no writ). In assessing diligence, the relevant inquiry is whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances and was diligent up until the time the defendant was served. *Proulx*, 235 S.W.3d at 216; *see Tate v. Beal*, 119 S.W.3d 378, 381 (Tex. App.—Fort Worth 2003, pet. denied). A plaintiff is not required to use the highest degree of diligence in order to toll the statute of limitations; he need only show that his actions and efforts to serve the defendant were reasonably diligent. *See Proulx*, 235 S.W.3d at 216; *see also Martinez v. Becerra*, 797 S.W.2d 283, 284-85 (Tex. App.—Corpus Christi 1990, no writ); *Beavers v. Darling*, 491 S.W.2d 711, 714 (Tex. Civ. App.—Waco 1973, no writ).

As set forth in the majority opinion, there was conflicting evidence presented at trial on the question of due diligence. Barbara Stinnet, the process server hired by Vidaurri, and Chris Morgan, an attorney who represented Hull on an unrelated matter, testified on behalf of Hull. In support of his claim that he exercised due diligence, Vidaurri presented the testimony of Deborah Foster, a paralegal from the law firm who represented Vidaurri. In addition to these witnesses, Hull testified that he was in jail at the time Vidaurri filed suit and that he moved to Dallas upon his release. Hull also testified that, since the accident, he never lived anywhere longer than

six months and that, while in Dallas, he lived with friends in various motels. Hull stated that he would pay the friends in cash or buy groceries and that he never registered as a motel guest. Hull also testified that he had worked at various restaurants in the Dallas area, but none for longer than a few months.

Based on the testimony of Morgan and Stinnet, the majority finds that there is a four-month gap—between March 29, 2005, and August 1, 2005—in Vidaurri's explanation of his efforts to serve Hull. In so doing, the majority substitutes its own judgment for that of the jury and all but ignores the record evidence favorable to the jury's finding of due diligence.[2] But contrary to the majority's opinion, the record demonstrates there was no four-month gap in Vidaurri's efforts to locate and serve Hull. Morgan testified that, after his conversation with Vidaurri's attorney in March 2005, he received three phone calls inquiring about serving Hull and that those calls were received "in the intervening time" during "the summer of 2005"—i.e., during the alleged four-month gap as found by the majority. Based on this undisputed testimony, the jury could have rationally inferred that there were no unexplained gaps in Viduarri's efforts to locate and serve Hull.[3]

---

[2] It is not surprising that the majority relies heavily on the testimony of Morgan and Stinnet to support its conclusion that Viduarri did not exercise due diligence because these were the two witnesses who testified at trial in support of Hull's claim that there was a *lack* of due diligence. But even if one accepts the testimony of Morgan and Stinnet as true, there is sufficient evidence to support the jury's verdict of due diligence. That the majority refuses to view the evidence in the light most favorable to this verdict demonstrates the majority's complete failure to apply the proper standard of review.

[3] The majority's reliance on the "equal inference rule" to discredit the jury's verdict is misguided. While the equal inference rule does not allow a jury to infer either of two facts where circumstances are equally consistent with both facts, *see City of Keller v. Wilson*, 168 S.W.3d 802, 813 (Tex. 2005), that rule is inapplicable here. Morgan's testimony was undisputed that he received three phone calls in "the summer of 2005" inquiring about serving Hull. This testimony is clear that Morgan received the phone calls during the alleged four-month gap as found by the majority. The

In addition, Foster testified that the law firm tried to call Hull several times and that the firm's in-house investigator tried unsuccessfully to track down Hull by looking for a paper trail and trying to find an address for Hull based on his cell phone number. Foster stated that she discovered later that Hull "had like five different addresses at the time and that one of them was in jail." Foster also testified that the law firm's in-house investigator ran "auto track" searches to try and locate Hull and that the "auto track system is usually pretty decent at helping us track people down," but "[w]e just weren't getting any results there." Based on this evidence, I would conclude that whether Vidaurri exercised due diligence in trying to locate and serve Hull was a question of fact for the jury, not this Court, to resolve. *See Proulx*, 235 S.W.3d at 216 (holding question of plaintiff's diligence in effecting service is generally one of fact); *see also Elam v. Armstrong*, No. 03-07-00565-CV, 2008 Tex. App. LEXIS 6227, at *9-11 (Tex. App.—Austin Aug. 14, 2008, no pet.) (mem. op., not designated for publication) (finding question of due diligence was question of fact that defeated summary judgment despite plaintiff's inability to state frequency or extent of internet searches for defendant); *Lawrence v. GEICO Gen. Ins. Co.*, No. 01-07-00873, 2009 Tex. App. LEXIS 5082, at *9-11 (Tex. App.—Houston [1st Dist.] July 2, 2009, no pet.) (mem. op., not designated for publication) (affirming trial court's finding of due diligence based on lawyer's testimony that "not a single month . . . passed that something wasn't being done").

The majority, however, faults Foster for not "provid[ing] any dates or further details for any of these actions" and for testifying inconsistently about which attorneys at the law firm were

---

jury was therefore entitled to infer that these calls related to Viduarri's efforts to serve Hull during the relevant time period.

5

actively trying to serve Hull. But the record is clear that the law firm's in-house investigator was conducting auto track searches during the alleged four-month gap identified by the majority, and the jury could have inferred from Foster's testimony that Stinnet was not the only person working on trying to locate and serve Hull and that the law firm's in-house investigator was actively attempting to locate Hull during the time that Stinnet was not. *See City of Keller*, 168 S.W.2d at 821 (presuming that jury drew all inferences in favor of its verdict).

In addition, when considering whether Vidaurri was diligent in his efforts to serve Hull, the majority refuses to acknowledge Hull's own testimony, which detailed his many changes of address during the relevant time period and his lack of a permanent job. *Cf. Proulx*, 235 S.W.3d at 217 (considering evidence that defendant was actively avoiding service in determining whether plaintiff exercised due diligence); *Martinez*, 797 S.W.2d at 285 (finding that defendant's multiple changes of address and attempts to avoid service "weigh heavily in favor of finding due diligence"). Coupled with Foster's testimony that Hull "had like five different addresses at the time and that one of them was in jail," the jury could have inferred from Hull's testimony that he was actively avoiding service or, at a minimum, was attempting to conceal his whereabouts. *See City of Keller*, 168 S.W.2d at 821; *see also Martinez*, 797 S.W.2d at 285 (finding that concealment weighs heavily in favor of finding due diligence); *Beavers*, 491 S.W.2d at 714 ("we cannot say as a matter of law that Plaintiff-Appellant failed to exercise due diligence" in effecting service where attempts at service were thwarted because defendant moved and changed jobs without leaving forwarding information).

6

Relying on *Ashley v. Hawkins*, 293 S.W.3d 175, 179 (Tex. 2009), the majority concludes that Viduarri's explanation of his efforts to serve Hull failed to demonstrate due diligence as a matter of law. In that case, the court found multiple unexplained gaps of eight months and two months in the plaintiff's efforts to serve the defendant. *Id.* at 180 & n.6. The record also showed that, despite having located the defendant in California, it took the plaintiff almost two months to accomplish service. *Id.* at 180 n.6. While a two-month delay would not amount to a lack of due diligence as a matter of law in most circumstances, the supreme court explained that this gap, coupled with an earlier unexplained gap of five months, amounted to a lack of due diligence as a matter of law. *Id.* In contrast, the undisputed testimony here shows no unexplained gaps in Viduarri's efforts to serve Hull. More importantly, there is no evidence that Viduarri knew of Hull's whereabouts prior to accomplishing substituted service. The majority's reliance on *Ashley* is therefore inapposite.

Based on the evidence in the record before us and viewing this evidence in the light most favorable to the verdict, I would conclude that a reasonable jury could have found that Vidaurri acted as a reasonably prudent person would have acted and that Vidaurri acted diligently until Hull was served. Although the majority finds that the issue of due diligence in this case is a question of law, it is clear from the state of the record before us that the majority instead has chosen simply to disregard the jury's verdict, step into the shoes of the fact-finder, and re-weigh the evidence in favor of Hull. Because the majority has effectively usurped the role of the jury and has substituted its judgment for that of the jury on a question of fact well within the jury's province to resolve, I respectfully dissent.

7

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Pemberton

Filed:   January 22, 2010